# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

In re: JEFFERY POTTER,                                    No. 7-05-14071 MS

      Debtor.

_____

YVETTE J. GONZALES,

      Plaintiff,

v.                                                        Adversary No.  07-1062 M

JEFFERY W. POTTER;
SUMMIT INVESTMENT COMPANY, LLC;
SUMMIT VALDES BUSINESS PARK, LLC;
THE LEGAL DEFENSE AND MAINTENANCE
TRUST OF CALIFORNIA; MARIANA DANILOVIC,
as Trustee of the Legal Defense and Maintenance Trust
of California; and MARTIN FRIEDLANDER, Individually,
and as Trustee of the Legal Defense and Maintenance
Trust of California,

      Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Plaintiff's Motion for Summary Judgment on

Counts I-VII, XIV, XV, and XVI of the Second Amended Complaint ("Motion for Summary

Judgment") filed by Yvette J. Gonzales, the Chapter 7 Trustee ("Trustee"), by and through her

attorneys, Jacobvitz, Thuma, and Walker, P.C. (David T. Thuma).  *See* Docket # 88.  Defendants

Martin Friedlander, *pro se,* and Jeffery Potter, *pro se,* each filed a response in opposition to the

Motion for Summary Judgment.[1]  (*See* Docket # 93 and Docket # 97).  The Motion for Summary

_____

[1]The Trustee filed a reply in support of the Motion for Summary Judgment ("Reply")
(Docket # 96), and Martin Friedlander and Jeffery Potter each filed a surreply in response.
(Docket # 98 - "Friedlander Surreply"); and Docket # 99 - "Potter Surreply").

1

Judgment requests the Court grant summary judgment against Jeffery Potter and Martin

Friedlander, in his individual capacity, as to Counts I, II, III, IV, V, VI, VII, XIV, XV, and XVI

of the Second Amended Complaint to Avoid Fraudulent Transfers, for Turnover, for Declaratory

Judgment, for Injunction, and for Other Relief ("Second Amended Complaint").[2]

    The object of the Second Amended Complaint is the Trustee's effort to recover for the

benefit of the bankruptcy estate certain transfers of real and personal property made to the Legal

Defense and Maintenance Trust of California ("California Trust"). The trust was formed in

August of 2003, more than two years before the date of the filing of Defendant Jeffery Potter's

bankruptcy petition.[3] The Trustee asserts that the transfers to the California Trust are

recoverable as fraudulent transfers based on actual fraud and constructive fraud under either

---

[2]Default has already been entered against the Legal Defense and Maintenance Trust of California, Mariana Danilovic, as original trustee of the Legal Defense and Maintenance Trust of California, and Martin S. Friedlander, as successor trustee of the Legal Defense and Maintenance Trust of California, pending judgment as to the non-defaulting defendants. (*See* Docket # 81). The Trustee also filed a motion for default judgment against Defendants Summit Investment Company, LLC ("Summit Investment") and Summit Valdes Business Park, LLC ("Summit Valdes"). *See* Docket # 89. The Court will address the motion for default against Summit Investment and Summit Valdes by separate order.

    The Trustee also asserted in her Reply that summary judgment should be granted as to Counts XII and XIII of the Second Amended Complaint, based on the failure of Summit Investment and Summit Valdes to file responses to the Motion for Summary Judgment. The Court's disposition of the motion for default judgment makes it unnecessary to consider the Trustee's request for summary judgment against the LLCs.

[3]Because the transfer occurred more than one year before the date of the filing of the petition, outside the reach-back period for recovery of fraudulent transfers under 11 U.S.C. § 548, the Trustee filed her complaint under state law, which generally has a statute of limitations applicable to fraudulent transfer actions of four years. *See* 11 U.S.C. § 544 (b) (granting the Trustee the power to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law . . . "); N.M.S.A. 1978 § 56-10-23(A) (Repl. Pamp. 1996)(four year statute of limitations under New Mexico Uniform Fraudulent Transfer Act); Cal.Civ.Code § 3439.09(a) and (b)(four year statute of limitations under California Uniform Fraudulent Transfer Act).

California or New Mexico law.[4]   The Trustee primarily bases her request for summary judgment

on previous statements Defendant Jeffery Potter has made in the Statements and Schedules filed

in his bankruptcy proceeding, statements made in the Complaint to Avoid Transfers Pursuant to

11 U.S.C. § 544 and for Turnover ("Original Complaint") filed in Adversary Proceeding No. 05-

1151M, and in statements made in Jeffery W. Potter's Approval of Proof of Claim filed by

Martin S. Friedlander, bearing Claim No. 15, filed on 1/30/06, as a Secured Prior Claim of the

Debtor in Possession in the Full Amount Stated and that Said Secured Claim Shall have Priority

over any Proof of Claim filed by LANB ("Claims Approval"- Docket # 155).   The Trustee also

attaches certain communications between Mr. Potter and his former bankruptcy counsel which

were admitted as exhibits in connection with the hearing in Defendant Jeffery Potter's

bankruptcy proceeding, held on April 10, 2007 on the applications for compensation filed by

Davis & Pierce.   No affidavits or deposition testimony were offered in support of the Motion for

Summary Judgment.

Defendant Martin Friedlander opposes the Motion for Summary Judgment, asserting that

there is no evidence to support a finding of lack of reasonably equivalent value as of August 25,

---

[4]*See* Counts I, II, III, and IV of the Second Amended Complaint.  The remaining counts upon which the Trustee seeks summary judgment are: Count V  - avoidance of the transfers under 11 U.S.C. § 548(e) as transfers to a self-settled trust made with actual intent to hinder, delay, or defraud present or future creditors; Count VI - declaratory judgment that the purported settlement and dismissal of the fraudulent transfer action under Adversary No. 05-1151 was void; Count VII - declaratory judgment that the spendtrhift trust provisions contained in the California Trust are void; Count XIV - declaratory judgment that the Trustee has derivative standing to avoid the transfers made by Summit Investment and Summit Valdes; Count XV - for turnover of the transferred property or payment of the value of the transferred property under 11 U.S.C. § 550(a)(2) and/or 11 U.S.C. § 550(a); and Count XVI - for turnover of the property transferred to the California Trust under 11 U.S.C. § 542.

3

2003, the date the California Trust was formed; that the California Trust was not formed with the intent to hinder, delay, or defraud creditors; that Defendant Potter's prior bankruptcy counsel failed to represent him properly and caused the filing of a "sham" bankruptcy; and that any communications between Defendant Potter and his prior counsel are subject to the attorney-client privilege and constitute improper hearsay evidence as against Defendant Martin Friedlander.

Defendant Jeffery Potter's objection to the Motion for Summary Judgment echos the arguments asserted by Mr. Friedlander. He disputes that the statements contained in his statements and schedules establish that the transfers to the California Trust were fraudulent and maintains that he formed the California Trust for the purposes of funding litigation so that he could ultimately repay his creditors.

After consideration of the Motion for Summary Judgment and the supporting documentation, and objections thereto, the Court finds that, while the statements contained in Jeffery Potter's statements and schedules are insufficient to establish fraudulent intent, the statements contained in the Original Complaint coupled with the Defendant's other admissions regarding the facts and circumstances surrounding the formation of the California Trust are sufficient to establish actual intent to defraud under either California or New Mexico fraudulent transfer law. The Court will, therefore, grant summary judgment in favor of the Trustee.

SUMMARY JUDGMENT STANDARDS

Summary judgment is governed by Rule 56, Fed.R.Civ.P., made applicable to bankruptcy

4

proceedings by Rule 7056, Fed.R.Bankr.P.[5]  It is appropriate to grant summary judgment when

there are no genuine issues of material fact and the moving party is entitled to judgment as a

matter of law.  *Id.*   "[A] party seeking summary judgment always bears the initial responsibility

of informing the . . . court of the basis for its motion, and  . . . [must] demonstrate the absence of

a genuine issue of material fact."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986).   Affidavits in support of a motion for summary judgment are not

required. Rule 56(a), Fed.R.Civ.P. ("A party claiming relief may move, *with or without*

*supporting affidavits* . . . ")(emphasis added).  Nor must a claimant wait until after a defendant

responds to the complaint before filing a motion for summary judgment.  *See* Rule 56(a),

Fed.R.Civ.P. [6]   It is appropriate to grant summary judgment if the undisputed facts, established

by "the pleadings, the discovery and disclosure materials on file," are sufficient to show that

there is no genuine issue of material fact and that the moving party is entitled to judgment as a

matter of law.  Rule 56(c), Fed.R.Civ.P.

  In determining whether summary judgment should be granted, the Court must view the

---

[5]Rule 56, Fed.R.Civ.P. provides, in relevant part:
  The judgment sought should be rendered if the pleadings, the discovery and
  disclosure materials on file, and any affidavits show that there is no genuine issue
  as to any material fact and that the moving party is entitled to judgment as a
  matter of law.
  Rule 56(c), Fed.R.Civ.P.

[6]Rule 56(a), Fed.R.Civ.P. provides:
  A party claiming relief may move, with or without supporting affidavits, for
  summary judgment on all or a part of the claim.  The motion may be filed at any
  time after:
    (1) 20 days have passed from commencement of the action; or
    (2) the opposing party serves a motion for summary judgment.
  Rule 56(a), Fed.R.Civ.P.

5

facts in the light most favorable to the party opposing summary judgment. *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994)(stating that the court must "view all facts and any reasonable inferences that might be drawn from them in the light most favorable to the nonmoving party . . .")(citation omitted); *Harris v. Beneficial Oklahoma, Inc., (In re Harris),* 209 B.R. 990, 995 (10th Cir. BAP 1997)(same). To withstand a motion for summary judgment, the opposing party may not simply rest upon its pleading or denial of the allegations, but must demonstrate that genuine issues of material fact require a trial. Rule 56(e)(2), Fed.R.Civ.P.[7] A fact is "material" when the fact is essential to the elements necessary under the substantive law to dispose of the claim. *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)(citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue is "genuine" when there is sufficient evidence on either side "so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248).

The "Declarations" of Martin Friedlander and Jeffery Potter are Insufficient to Satisfy the Requirements of Rule 56(e), Fed.R.Civ.P.

The responses filed by Martin Friedlander and by Jeffery Potter each purport to contain a declaration as to the facts each asserts are in dispute in this adversary proceeding. The declarations state that the declarant has "personal knowledge of all of the facts alleged herein

---

[7]Rule 56(e)(2) provides, in relevant part:
> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.
> Rule 56(e), Fed.R.Civ.P.

6

and if sworn as a witness herein I could competently testify to these facts." *See* Defendant

Friedlander's Opposition to Trustee's Motion for Summary Judgment filed on 2/11/08

("Friedlander's Response"), p. 6; Defendant Jeffery W. Potter's Opposition to Trustee's Motion

for Summary Judgment Filed on 2/11/08 ("Potter's Response"), p. 5. The declarations contained

in Potter's Response and in Friedlander's Response also recite that they were executed "under

the perjury laws of the United States." *See* Friedlander's Response, p. 15; Potter's Response, p.

10. The declaration in Potter's Response includes the following statements: "I have the

Declaration of Martin S. Friedlander. The same is true to the best of my knowledge." There is

no other attestation as to the truth of the statements contained in Mr. Potter's declaration, nor is

the declaration signed by Mr. Potter. The declaration portion of Friedlander's Response contains

no averment that the statements are true and correct, though elsewhere in Friedlander's

Response, Mr. Friedlander states that the declaration "will attest to the truth". *See, e.g.,*

Friedlander's Response, p. 24.

Mr. Friedlander asserts that the declarations under penalty of perjury have the same effect

as affidavits, citing 28 U.S.C.§ 1746. Unsworn declarations made under penalty of perjury may

satisfy a requirement for an affidavit pursuant to 28 U.S.C. § 1746, which provides, in relevant

part:

> Wherever, under any law of the United States or under any rule . . . any matter is
> required or permitted to be supported, evidenced, established, or proved by . . .
> affidavit, . . . such matter may, with like force and effect, be supported,
> evidenced, established, or proved by the unsworn declaration . . . in writing of
> such person which is subscribed by him, as true under penalty of perjury, and
> dated, in substantially the following form:
> . . . .
> (2) If executed within the United States,. . . "I declare (or certify, verify, or state)
> under penalty of perjury that the foregoing is true and correct. Executed on
> (date).

(Signature)".

28 U.S.C. § 1746(2).

Neither the declaration contained in Friedlander's Response nor the declaration contained in

Pottter's Response complies with the requirements of 28 U.S.C. § 1746: Mr. Potter failed to sign

his declaration and failed to certify that the statements made the declaration are true and correct,

and Mr. Friedlander failed to certify that the statements contained in his declaration are true;

consequently the declarations fail to satisfy the requirement for opposition to summary judgment

under Rule 56(c), Fed.R.Civ.P. *See Smith v. Muscatell (In re Muscatell),* 106 B.R. 307, 309

(Bankr.M.D.Fla. 1989)(concluding that unsworn declaration failed to meet the requirements of

28 U.S.C. § 1746 where the unsworn statement was signed under penalty of perjury, but not

declared true and correct).

Because the Court need not treat the declarations contained in Potter's Response and

Friedlander's Response as the equivalent of affidavits, summary judgment should be entered if

otherwise appropriate. *See* Rule 56(e)(2), Fed.R.Civ.P.

DISCUSSION

In support of her Motion for Summary Judgment, the Trustee relies on the California

Trust agreement, other statements made by Jeffery Potter in the Original Complaint and in the

Claims Approval, and statements made by Jeffery Potter in certain written and e-mail

correspondence to his former bankruptcy counsel. Both Mr. Potter and Mr. Friedlander object

to the Trustee's use of the e-mail and other correspondence in support of her Motion for

Summary Judgment, arguing that it is subject to the attorney-client privilege, constitutes

impermissible hearsay evidence, and cannot be used in this unrelated proceeding.

8

<u>The Correspondence and E-Mail Can be Used as Evidence in Support of the Trustee's
Motion for Summary Judgment.</u>

The correspondence and e-mail were introduced and admitted into evidence without

objection at a final hearing held April 10, 2007 in Defendant Jeffery Potter's bankruptcy

proceeding.  Defendant Jeffery Potter and Martin Friedlander were present at that final hearing.

The purpose of that hearing was to consider the reasonableness of Davis & Pierce's fees and

was, therefore, not related to the Trustee's complaint to recover the transfers to the California

Trust.   Nevertheless, it is not inappropriate for a bankruptcy court to consider evidence that was

admitted in prior evidentiary hearings provided that the parties are permitted to challenge the

prior evidence.  *See In re Blumer,* 95 B.R. 143, 146 (9th Cir. BAP 1988)(stating that bankruptcy

court "*may,* but need not, consider evidence from a prior hearing in the same case if the notice of

what will be considered is sufficient to permit the parties to challenge the prior

evidence.")(citing *In re Acequia, Inc.,* 782 F.2d 1352, 1359 (9th Cir. 1986)(finding that

bankruptcy court was not precluded from considering evidence admitted in prior evidentiary

hearings when ruling on confirmation).[8]

---

[8] Mr. Friedlander objects to the e-mails on grounds that they are subject to the attorney-
client privilege because they consist of communications between Mr. Potter and his then
bankruptcy counsel.   But by failing to object to the admission of such documents at the prior
hearing, any attorney-client privilege that might have applied was waived. *Cf.  U.S. v. Ary,* 518
F.3d 775, 784 (10th Cir. 2008)("The key is that the party seeking protection must treat the
document or communication as confidential. When a party delays in asserting protection,
however, the adverse party is free to continue to use the material, thereby negating its
confidential character.")(citation omitted); *United States v. Bernard,* 877 F.2d 1463, 1465 (10th
Cir. 1989) ("Any voluntary disclosure by the client is inconsistent with the attorney-client
relationship and waives the privilege.")(citation omitted).
On the other hand, the Trustee's reliance on *In re Foster,* 188 F.3d 1259 (10th Cir. 1999)
for the proposition that a bankruptcy trustee for an individual's bankruptcy estate holds the
attorney-client privilege and, therefore, has the power to waive it, is overly broad.  In *Foster,* the
Tenth Circuit acknowledged that a bankruptcy trustee succeeds to a corporate debtor's right to

9

<u>Hearsay Arguments.</u>

Mr. Friedlander also argues that the e-mail and other correspondence attached to the Motion for Summary Judgment constitute hearsay evidence as to him.  Such out of court statements may constitute hearsay as to Mr. Friedlander, but that fact fails to defeat the Motion for Summary Judgment as to Jeffery Potter, who waived his attorney-client privilege.  Other evidence, including Mr. Friedlander's admission that he drafted the California Trust, is sufficient to establish that the Trustee can recover the transfers from Mr. Friedlander either as Trustee of the California Trust, or as a beneficiary of the California Trust.

Although the Court can consider the previously admitted exhibits, the content of those exhibits is insufficient on its own to establish fraudulent intent.  In the e-mails and correspondence the Trustee relies upon in support of the Motion for Summary Judgment, Defendant Jeffery Potter exhorts his then counsel to "unwind the trust."  Such statements constitute some evidence that Mr. Potter recognized that the assets in the California Trust needed to be administered through his bankruptcy proceeding, but do not establish on their own that he intended to hinder, delay, or defraud his creditors at the time that the California Trust was formed.[9]

_____

assert or waive attorney-client privilege, but required the bankruptcy court to balance the harm to the debtor against the trustee's need for information when determining whether the bankruptcy trustee could control an individual debtor's claim of attorney-client privilege.  *Foster,* 188 F.3d at 1268.  But because the Court finds that the privilege was waived by its admission in the prior proceeding, the Court need not consider whether it is appropriate for the Trustee to waive the privilege under the *Foster* standards.

[9]*See* N.M.S.A. 1978 § 56-10-18(A) (Repl. Pamp. 1996)("A transfer . . . is fraudulent . . . if the debtor *made the transfer* . . . with actual intent to hinder, delay or defraud any creditor of the debtor")(emphasis added).  *Cf. In re M & L Business Mach. Co., Inc.,* 155 B.R. 531, 539-540 (Bankr.D.Colo. 1993), *aff'd,* 164 B.R. 657 (D.Colo. 1994), *aff'd,* 84 F.3d 1330 (10th Cir.

10

<u>The Statements Contained in the Original Complaint and in Defendant's Statements and Schedules Constitute Admissions</u>

Generally, factual statements made in pleadings or pre-trial orders constitute judicial admissions[10] that are conclusively binding on the party who made them.[11]  However, "admissions made in another proceeding are not conclusive and binding judicial admissions."[12] Rather, they are evidentiary admissions which the court may choose to admit in a separate proceeding, but which will not have conclusive effect.[13]

The Original Complaint includes the following statements: 1) that Jeffery Potter did not

---

1996)(stating that the trustee must prove actual fraudulent intent under § 548;  that "[f]raudulent intent may be established . . . by circumstantial evidence or by inferences drawn from a course of conduct[;]" and that "[s]ubsequent conduct, itself, is often probative of a debtor's intent on a prior occasion.")(citing *In re Farmers Cooperative Ass'n of Talmage, KS v. Strunk,* 671 F.2d 391 (10th cir. 1982)).

[10]Judicial admissions are separate and distinct from the doctrine of judicial estoppel, which requires a showing of the following factors: 1) that the party's later position is clearly inconsistent with the earlier  position; 2) that the party succeeded or convinced the court to accept its earlier position so that it would appear that the court was misled; and 3) that the party would achieve an unfair advantage to the detriment of the opposing party if the party were not estopped from taking the later position.  *In re Riazuddin,* 363 B.R. 177, 185 (10th Cir. BAP 2007)(citing *Johnson v. Lindon City Corp.,* 405 F.3d 1065, 1069 (10th Cir. 2005)(approving of the factors enunciated by the Supreme Court in *New Hampshire v. Maine,* 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)).

[11]*Jenkins v. Tomlinson (In re Basin Resources Corp.),* 182 B.R. 489, 492 (Bankr.N.D.Tex. 1995).

[12]*Id.*

[13]*See In re Schraiber,* 141 B.R. 1000, 1007 (Bankr.N.D.Ill. 1992) (explaining that "[a]n admission made in one proceeding will not be regarded as conclusive and binding in a separate proceeding[ ]" so that while a statement made in a motion filed in a separate adversary proceeding might be admissible as an admission by a party opponent, it does not constitute a judicial admission with conclusive effect)(citations omitted).

11

receive reasonably equivalent value in exchange for the transfers to the California Trust; and 2) that the transfers rendered Jeffery Potter insolvent. These statements constitute evidentiary admissions made by Defendant Potter. But because these statements presume legal conclusions necessary to a cause of action for constructive fraud[14], the Court will not treat them as judicial admissions that conclusively establish all elements necessary to the Trustee's cause of action.

Statements contained in a debtor's statements and schedules can constitute judicial admissions.[15] The Trustee points to Mr. Potter's statement in Schedule B(19) that the California Trust "was subject to avoidance for fraudulent transfer (purports to hold all of the debtor's real and personal property)" as an admission that the transfers at issue constitute fraudulent transfers. But just like the admissions contained in the Original Complaint, the Court will not treat it as a judicial admission with conclusive effect because it presumes a legal conclusion. Nor is the statement sufficient to establish fraudulent intent at the time of the transfers.

<u>The Admissions Contained in the Original Complaint together with Other Undisputed Circumstantial Evidence are Sufficient to Support an Inference of Fraudulent Intent under Either California or New Mexico Law</u>[16]

---

[14]*See* N.M.S.A. 1978 § 56-10-18(A)(2) (Repl. Pamp. 1996) and Cal.Civ.Code. § 3439.05:

[15] *See Larson v. Groos Bank, N.A.,* 204 B.R. 500, 502 (W.D.Tex. 1996)("[S]tatements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.")(citing *In the Matter of Gervich,* 570 F.2d 247, 253 (8th Cir. 1978)(remaining citations omitted)).

[16]Because the transfers to the California Trust occurred more than one year before the date of the filing of Mr. Potter's bankruptcy petition, the Trustee seeks to avoid the transfers under state law, which generally has a four year statute of limitations. *See* 11 U.S.C. § 548(a)(1)( "The trustee may avoid any transfer of an interest of the debtor in property . . . that was made . . . on or within one year before the date of the filing of the petition . . . "); 11 U.S.C. §544(b) (". . . the trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law . . ."); Cal.Civ.Code § 3439.09 (actions to avoid a fraudulent transfers under Cal.Civ.Code § 3439.04(a)(1), § 3439.04(a)(2) or § 3439.05 are subject to a four-

12

The fraudulent transfer statutes in California and New Mexico are substantively identical.[17]   However, the standards of proof are different: California applies a preponderance of evidence standard to fraudulent transfer actions whereas New Mexico requires proof of fraud by clear and convincing evidence.[18]   Under either the New Mexico or the California Uniform Fraudulent Transfer Act (referred to collectively as the "UFTA"), a transfer made with actual intent to hinder, delay, or defraud any creditor is fraudulent and, consequently, may be avoided.[19]   In determining actual intent, the following factors are relevant:

> (1) whether the transfer or obligation was to an insider.
> (2) whether the debtor retained possession or control of the property transferred after the transfer.
> (3) whether the transfer or obligation was disclosed or concealed.
> (4) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (5) whether the transfer was of substantially all the debtor's assets.
> (6) whether the debtor absconded.
> (7) whether the debtor removed or concealed assets.
> (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the

year statute of limitations from the time of the transfer); N.M.S.A. 1978 § 56-10-23 (Repl. Pamp. 1996)(four year statute of limitations).

[17]*Compare,* Cal.Civ.Code § 3439.04 *with* N.M.S.A. 1978 § 56-10-18(A)(1) and (2)(Repl. Pamp. 1996).  Both statutes follow the Uniform Fraudulent Transfer Act. *See* N.M.S.A. 1978 § 56-10-14 ("This act may be cited as the 'Uniform Fraudulent Transfer Act'"); Cal.Civ.Code § 3439 ("This chapter may be cited as the Uniform Fraudulent Transfer Act.").

[18]*See In re Stern,* 345 F.3d 1036, 1043 (9th Cir. 2003)(adopting and applying preponderance of the evidence standard of proof to fraudulent transfer action filed under Cal.Civ. Code §§ 3439.04(a), 3439.04(b)1-2 and 3439.05); *Mazer v. Jones (In re Jones),* 184 B.R. 377, 386 (Bankr.D.N.M. 1995)("Proof of fraud in New Mexico is by clear and convincing evidence.")(citing *First Nat'l Bank in Albuquerque v. Abraham,* 97 N.M. 288, 292, 639 P.2d 575, 579 (1982)); *Ellen Equipment Corp. v. C.V. Consultants & Associates, Inc.,* 144 N.M. 55, 58, 183 P.2d 940, 943 (Ct.App. 2008)(creditor must prove actual fraud under UFTA by clear and convincing evidence).

[19]N.M.S.A. 1978 § 56-10-18(A)(1) (Repl.Pamp. 1996); Cal.Civ.Code § 3439.04(1).

13

obligation incurred.

    (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

    (10) whether the transfer occurred shortly before or shortly after a substantial debt was incurred.

    (11) whether the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Cal.Civ.Code. § 3439.04; N.M.S.A. 1978 § 56-10-18(B) (Repl. Pamp. 1996)(substantively identical).

The enumerated factors contained in the UFTA are not exclusive.[20]

Because an action to recover a fraudulent transfer requires consideration of a person's intent, such actions generally cannot be resolved on summary judgment.[21] But because a defendant rarely admits to fraudulent intent, the Court can infer fraudulent intent based on the surrounding facts and circumstances, including the presence of several of the factors enumerated in the statute. [22] As discussed below, the terms of California Trust together with the admissions of Jeffery Potter contained in the Original Complaint and in his response to the Motion for

---

    [20]*See Jones,* 184 B.R. at 386 ("The enumeration of these factors is non-inclusive)(citing *Dona Ana Savings and Loan Ass'n v. Dofflemeyer,* 115 N.M. 590, 593, 855 P.2d 1054, 1057 (1993)).

    [21] *See Prochasca v. Marcoux,* 632 F.2d 848, 851 (10th Cir. 1980)(noting that questions of intent which depend upon intangible factors such as witness credibility are matters to be determined at trial and not on summary judgment). *Cf. In re Baines,* 337 B.R. 392, (Bankr.D.N.M. 2006)("The issue of fraudulent intent, central to a claim for non-dischargeability under 11 U.S.C. § 523(a)(2)(A) is a material issue which is not easily subject to adjudication by summary judgment.")(citation omitted).

    [22]*See Jones,* 184 B.R. at 386 ("Although proof of one or more of these 'badges of fraud' [under the UFTA] does not create a presumption that the transfer was fraudulent . . . proof of several badges of fraud may afford a basis to infer fraud.")(citation omitted); *In re Kopp,* 383 B.R. 179, 185 (Bankr.D.Kan. 2008)(stating that because "actual intent may be proven by circumstantial evidence or on inferences drawn from a course of conduct because a defendant is unlikely to testify that his or her intent was fraudulent . . . . a court may look to all the surrounding facts and circumstances and grant summary judgment if appropriate.")(citation omitted).

14

Summary Judgment, establish the presence of a number of the relevant badges of fraud from which actual intent to defraud may be inferred under the UFTA. Such undisputed circumstances surrounding the formation of the California Trust are sufficient to grant summary judgment in favor of the Trustee.[23]

The California Trust expressly recites that its purpose is "not to defraud present or existing creditors", but that statement is belied by other terms and/or recitals contained in the California Trust agreement. First, the California Trust agreement acknowledges that Jeffery Potter was in the midst of significant litigation and that a "judgment against Potter Settlor has also deprived the Potter Settlor from receiving funds to pay his living expenses . . . " California Trust, Recital No. 3. Mr. Potter's Response admits to a $600,000.00 judgment against him at the time the California Trust was formed. *See* Response, p. 5, ¶ 4. ("I personally suffered a judgment in the approximate amount of over $600,000 at that time"). Thus it is clear that the transfers occurred at a time when the debtor had been sued or threatened with suit, and that the transfers occurred shortly after a substantial debt (the $600,000.00 judgment) was incurred.

Next, the California Trust provides for the transfer of "All of Jeffery W. Potter's assets, real or personal, wherever located." California Trust, Schedule A. The clear intent of the California Trust, according to its Schedule A, was to transfer **all** of the Mr. Potter's assets.

---

[23]*Cf. In re Gertsch,* 237 B.R. 160, 165 (9th Cir. BAP 1999)(upholding grant of summary judgment on intent to defraud requirement under § 523(a)(2)(B), stating that "summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue.")(quoting *Newman v. Checkrite California Inc.,* 912 F.Supp. 1354,1380 (E.D.Cal. 1995)(citing *White v. Roper,* 901 F.2d 1501, 1505 (9th Cir. 1990)); *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990)("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

15

By transferring all of his assets, whether real or personal, and wherever located, to the California Trust, Mr. Potter, as an individual, necessarily rendered himself insolvent. In addition, Mr. Potter's statement in the Original Complaint that the transfers to the California Trust rendered him insolvent serves as additional evidence of the presence of one of the badges of fraud.

Mr. Potter further admits in his Response that he continued to live in the residential property transferred to the California Trust. *See* Response, p. 8, ¶ 13. (stating that his stay at 53 La Vista was not for free, and that he did "like kind work in exchange for living there"). The retention of possession of at least one of the transferred properties establishes another badge of fraud under the UFTA.

Mr. Potter and Mr. Friedlander argue that the Trustee cannot prove her case because she has presented no evidence of the value of the assets at the time of the transfers to the California Trust. But given the presence of other undisputed circumstantial evidence that supports an inference of actual fraud, a lack of evidence as to the value of the transferred assets is not fatal to the Trustee's request for summary judgment as to Counts I and III.[24] Nor does the fact that certain of the assets transferred to the California Trust were encumbered by liens at the time of the transfer defeat the Trustee's claim to bring such property back into the bankruptcy estate, provided there was at least some equity in the transferred property.[25]

_____

[24]Lack of reasonably equivalent value is just one of the eleven enumerated badges of fraud under the UFTA. *See* Cal.Civ.Code § 3439.04; N.M.S.A. 1978 § 56-10-18(A)(1) (Repl.Pamp. 1996).

[25]*See In re Brun,* 360 B.R. 669, 674 (Bankr.C.D.Cal. 2007)("[P]roperty that is fully encumbered and/or exempt is not voidable as a fraudulent transfer . . . . Plaintiff can avoid the Transfer only to the extent Debtor transferred equity in the property, [and] . . . may recover the 'value' of that equity interest pursuant to § 550(a).")(citation omitted). This is because the fraudulent transfer statute, Cal.Civ.Code § 3439 et seq. allows creditors to avoid the transfer of

16

All factors need not be present in order to conclude that a fraudulent transfer has occurred under New Mexico or California statutes.[26] "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 34 F.3d 800, 806 (9th Cir. 1994)(quoting *Max Sugarman Funeral Home, Inc. v. A.D.B. Investors,* 926 F.2d 1248, 1254-55 (1st Cir. 1991)(emphasis and citations omitted). In addition, because the relevant statutes require intent to hinder, delay, **or** defraud, it is sufficient if the facts and circumstances show that the defendant merely intended to hinder or delay his or her creditors.[27] The stated purpose of the California

---

an "asset" which is defined under Cal.Civ.Code § 3439.01(a) as "unencumbered, non-exempt equity in property of a debtor." *Brun,* 360 B.R. at 672. The New Mexico fraudulent transfer statute similarly defines "asset" to exclude "property to the extent it is encumbered by a valid lien." N.M.S.A. 1978 § 56-10-15(B)(1) (Repl.Pamp. 1996).

[26]*See Filip v. Bucurenciu,* 129 Cal.App.4th 825, 834, 28 Cal.Rptr.3d 884, 890 (Ct. App. 2005)(stating that the factors enumerated in the California fraudulent transfer statute "do not create a mathematical formula to establish actual intent. There is no minimum number of factors that must be present before the scales tip in favor of finding of actual intent to defraud. This list of factors is meant to provide guidance to the trial court, not compel a finding one way or the other.")(citation omitted); *Royal Indem. Co. v. McClendon,* 64 N.M. 46, 48, 323 P.2d 1090, 1091 (1958)("A fraudulent conveyance may be established when circumstances attending the transaction point to the existence of a sufficient number of these badges of fraud."); *Jones* 184 B.R. at 386 (noting that the proof of one or more of the statutory badges of fraud does not create a presumption of fraud, but may, nevertheless afford a basis to infer fraud.")(citation omitted).

[27]*See* N.M.S.A. 1978 § 56-10-18(a)(1) (Repl. Pamp. 1996)("with actual intent to *hinder, delay, or* defraud . . .")(emphasis added). In construing the fraudulent transfer statute under the former Bankruptcy Act, the Tenth Circuit stated:
> Not only is a conveyance illegal if made with an intent to defraud the creditors of the grantor, but also equally illegal if made with an intent to hinder and delay them. Many an embarrassed debtor holds the genuine belief that if suits can be staved off for a season, he will weather a financial storm, and pay his debts in full. . . . The belief, even though reasonably well founded, does not clothe such debtor with a privilege to build up obstructions that will hold his creditors at bay. *Fish v. East,* 114 F.2d 177, 182 (10th Cir. 1940)(citations omitted).

17

Trust is to provide for the maintenance of Mr. Potter and fund his litigation, thus its intended effect could only be to shield his assets from creditors in order to allow Mr. Potter additional time to pursue and defend pending litigation.  Such a goal is not a legitimate, supervening, purpose sufficient to negate the fraudulent nature of the transfers, especially in light of the presence of several other badges of fraud.  The Court, therefore, concludes that the transfers to the California Trust were fraudulent under the UFTA.

Because there is sufficient evidence of actual fraud under a clear and convincing standard, summary judgment can be granted as to Counts I and III and it is not necessary to determine whether the transfers are constructively fraudulent.[28]  Nevertheless, because the Trustee also requests summary judgment on Counts II and IV based on New Mexico and California constructive fraud statutes, the Court will consider these claims.  California Civil Code § 3439.05 provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer.

The New Mexico statute is substantially identical.  *See*  N.M.S.A. 1978 § 56-10-18(A)(2).[29]

_____

[28]  *See also, In re AFI Holding, Inc.,* 525 F.3d 700, 707 (9th Cir. 2008)(noting that when proceeding under Cal.Civ.Code 3439.04(a)(1) based on actual fraud, the trustee does not have to show that the debtor received less than reasonably equivalent value in exchange for the transfer)

[29]That section provides:
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > (1) without receiving reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > > (a) was engaged or was about to engage in a business or

18

Both New Mexico and California law require the presence of two elements: 1) lack of reasonably equivalent value; and 2) insolvency.[30]

Mr. Potter and Mr. Friedlander both stress that the Trustee has not presented evidence of the value of the assets transferred to the California Trust as of the time the transfers were made, thus there can be no determination of whether Mr. Potter received reasonably equivalent value in exchange for the transfers to the California Trust.   This Court agrees.

The Original Complaint avers that Potter did not receive reasonably equivalent value in exchange for the transfers to the California Trust.   But this statement presumes a legal conclusion; it is not a factual admission of values from which a determination of reasonably equivalent value can be drawn.   As stated above, while the admissions in the Original Complaint constitute some evidence, the Court will not give them conclusive effect, especially when there

---

transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed, or reasonably should have
      believed that he would incur, debts beyond his ability to
      pay as they became due.

N.M.S.A. 1978 § 56-10-18(a)(2) (Repl. Pamp. 1996)

[30]*See Allied Products Corp. v.  Arrow Freightways, Inc.,* 104 N.M. 544, 547, 724 P.2d 752, 755 (1986)(interpreting former constructive fraud statute, N.M.S.A. § 56-10-4 which provided that "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration" to mean that "proof of both insolvency and lack of consideration" is required)(citation omitted); *Mejia v. Reed,* 31 Cal.4th 657, 664, 74 P.3d 166, 170 (2003)(transfers are fraudulent under Cal.Civ.Code § 3439.05 when debtor does not receive reasonably equivalent value in exchange for the transfer and the debtor was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer).

19

is no other evidence of value of the assets as of the time of the transfer.[31]  Thus material issues of

fact as to whether Mr. Potter received reasonably equivalent value preclude summary judgment

on the Trustee's claim to avoid the transfers based on constructive fraud.[32]

Count V - Avoidance of Transfer Under 11 U.S.C. § 548(e)[33]

The Trustee also requests summary judgment on Count V of the Second Amended

Complaint which seeks to avoid the transfers to the California Trust under 11 U.S.C. § 548(e).

That section provides:

> In addition to any transfer that the trustee may otherwise avoid, the trustee may avoid any
> transfer of an interest of the debtor in property that was made on or within 10 years
> before the date of the filing of the petition if --
> > (A) such transfer was made to a self-settled trust or similar device;
> > (B) such transfer was by the debtor;
> > (C) the debtor is a beneficiary of such trust or similar device; and
> > (D) the debtor made the transfer with actual intent to hinder, delay, or defraud any
> entity to which the debtor was or became, on or after the date that such transfer was
> made, indebted.

11 U.S.C. § 548(e).

Jeffery Potter is the settlor identified in the California Trust.  He is also one of its

---

[31]*See Guidry v. Sheet Metal Workers Int'l Ass'n Local No. 9,* 10 F.3d 700, 716 (10th Cir.
1993)(doctrine of judicial admission not applicable to propositions of law).

[32]*Cf.  Wiswall v. Wallaert (In re Wallaert),* 149 B.R. 665, 669 (Bankr.W.D.Wash.
1992)(denying summary judgment on claim for constructive fraud where neither party delineated
precisely the interest the debtors transferred nor the value of that interest); *In re Carbaat,* 357
B.R. 553, 560 (Bankr.N.D.Cal. 2006)("To determine whether the transfers sought to be avoided
by the Trustee were constructively fraudulent, the Court must determine the value of what the
Debtor transferred and the value of what he received.").

[33]Subsection (e) of 11 U.S.C. § 548 was enacted as part of the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and became effective as of April
27, 2005, the date of enactment of BAPCPA.  *See* Pub.L. 109-8, Title XIV, Section 1406(b),
making subsection (e) applicable only with respect to cases commenced under Tilte 11 on or
after April 20, 2005.

beneficiaries. He effectuated the transfer of the properties to the California Trust. As analyzed

above, the transfers to the California Trust were made with the intent to hinder or delay

creditors.[34]

Mr. Potter and Mr. Friedlander assert that the California Trust is not self-settled because

there are beneficiaries other than Mr. Potter and because some of the transfers were from

Summit Investment and Summit Valdes. Even if the Court were to accept these arguments, the

transfers to the California Trust are voidable under 11 U.S.C. § 548(e) at least as to Jeffery

Potter. Under 11 U.S.C. § 548, the debtor need only be "a" beneficiary, not the sole beneficiary;

the transfer must be to a self-settled trust "or other similar device", and the transfers must be

made by the debtor. 11 U.S.C. § 548(e). The California Trust was funded in part with shares of

Summit Investment and Summit Valdes, two independent limited liability companies. But

Defendant Jeffery Potter is the sole member of Summit Investment, and Summit Investment, in

turn, owned all membership interests of Summit Valdes. Thus Jeffery Potter effectuated the

transfers of the membership interests of Summit Investment and Summit Valdes to the California

Trust. Consequently, the Court rejects the arguments of Mr. Potter and Mr. Friedlander and

finds that the Trustee has sufficiently established all elements required under 11 U.S.C. § 548(e).

Count VI - Mr. Potter's Voluntary Dismissal of the Original Complaint is not Binding on the Trustee as a Matter of Law.

Before Mr. Potter's bankruptcy proceeding converted from Chapter 11 to Chapter 7, Mr.

Potter filed the Original Complaint to avoid the transfers to the California Trust as Adversary

---

[34]*Cf. In re Combes,* 382 B.R. 186, 193 (Bankr.E.D.N.Y. 2008)(stating that the analysis of a debtor's intent to defraud under § 548(e) is the same as under the applicable New York fraudulent transfer statute).

21

Proceeding No. No. 05-1141.  Following the withdrawal of Mr. Potter's bankruptcy counsel, Mr.

Potter, proceeding *pro se,* voluntarily filed a notice of dismissal of adversary proceeding No. 05-

1141. *See* Adversary Proceeding No. 05-1151 M, Docket # 28; Order Granting Motion to

Withdraw as Attorney of Record filed in Case No. 7-05-14071MS, Docket # 190.   But as

previously determined by this Court in its Order Granting Motion to Convert Case to Chapter 7

(Docket # 228 in Case No. 7-05-14071 MS), Mr. Potter was required to give notice of his

intended dismissal of Adversary Proceeding No. 05-1141 M in accordance with Rule 9019,

Fed.R.Bankr.P. but failed to do so.   Moreover, as determined by the Court in its Order Denying

Defendants' Motion to Dismiss ("Order Denying MTD"  - Docket # 83), the Chapter 7 Trustee is

not in privity with Mr. Potter. *See* Order Denying MTD, pp. 16 - 17.

A chapter 7 trustee appointed following the conversion of a case from Chapter 11 to

Chapter 7 is considered to be in privity with the former debtor-in-possession only "to the extent

their interests coincide." *Matter of Silver Mill Frozen Foods, Inc.,* 32 B.R. 783, 786

(Bankr.W.D.Mich. 1983)(quoting *Matter of Community Hospital of Rockland County,* 15 B.R.

785, 787 (Bankr.S.D.N.Y. 1981)).[35]   By dismissing Adversary Proceeding No. 05-1141 M

---

[35]*See also In re Shuman,* 78 B.R. 254, 256 (9th Cir. BAP 1987)(finding that privity
between the debtor and the trustee requires  a showing that interests of the debtor and the trustee
were so closely related that the debtor was the trustee's "virtual representative" in the prior
action.)(citation omitted).
    *See also, In re MS55, Inc.,* 477 F.3d 1131, 1135 (10th Cir. 2007)("It is well established
that a Chapter 7 trustee succeeds to the rights of the debtor-in-possession and is bound by prior
actions of the debtor-in-possession *to the extent approved by the court*.")(citing *Paul v. Monts,*
906 F.2d 1468, 1473 (10th Cir. 1990)(emphasis added)).  In *MS55, Inc.,* the unambiguous
language of a prior court-approved order established that the debtor-in-possession waived its
right to assert an avoidance action; consequently, the Chapter 7 trustee was likewise barred from
brining such action post-conversion. *Id.*   As previously determined by this Court in its Order
Denying MTD, p. 17 (Docket # 83), Mr. Potter dismissed Adversary Proceeding No. 05-1151 M
without  the Court's permission.  Thus the Chapter 7 Trustee is not automatically bound by Mr.

22

which sought to recover for the estate the assets transferred to the California Trust,  Mr. Potter

failed to act in the interests of creditors of the bankruptcy estate.  His interests did not, therefore,

coincide with the interests of the Trustee, who represents the interests of all creditors of the

bankruptcy estate.   Consequently, the dismissal of Adversary Proceeding No. 05-1141 is  not

binding on Trustee as a matter of law.

    <u>Count VII - The Spendthrift Trust Provisions in the California Trust are Void as a Matter
of Law</u>

    The California Trust contains a spendthrift trust provision.[36]    In considering the validity

of a spendthrift trust provision, bankruptcy courts look to applicable state law.[37]   In *Reardon v.*

*Brackett (In re Brackett),* 54 B.R. 57, 58 (Bankr.D.N.M. 1985), this Court concluded that under

applicable New Mexico common law, the bankruptcy trustee was entitled to reach the debtor's

interest in a self-settled spendthrift trust.  Similarly, under applicable California law, "when the

settlor is a beneficiary of the trust, any spendthrift provisions are invalid."  *In re Brooks-*

*Hamilton,* 348 B.R. 512, 521 (Bankr.N.D.Cal. 2006)(citing Cal.Prob.Code §

_____

Potter's prior actions as debtor-in-possession.

    [36]*See* California Trust, Article IV, Section G., "Spendthrift Provisions", which provides,
in relevant part:
> 1.  Except as otherwise provided in this Agreement, neither the principal of any trust
> created under this Agreement nor the income from this Agreement while in the hands of
> the Trustee shall be subject to assignment, alienation, pledge, attachment, execution or
> claims of creditors or any Beneficiary or Beneficiaries whomsoever through legal
> process, bankruptcy, operation of law or otherwise.  Any attempted sale, assignment,
> alienation, pledge or attachment of the principal or income held in any trust under this
> Agreement shall be null and void and shall not be recognized under any circumstances by
> the Trustee.

    [37]*See In re Brown,* 303 F.3d 1261, 1265 (11th Cir. 2002)(stating that "spendthrift and
support trusts are excluded from a debtor's bankruptcy estate to the extent they are protected
from creditors under applicable state law.")(citation omitted).

15404(a))(remaining citation omitted).   In this instance, Mr. Potter is the primary settlor of the California Trust and is also one of its beneficiaries.   The California Trust contains all of his assets and funds his living expenses, including health care and maintenance.   Thus under either California or New Mexico law, the spendthrift provision of the California Trust is unenforceable. The Trustee can, therefore, reach the self-settled assets of the California Trust.

Mr. Friedlander and Mr. Potter assert that the California Trust cannot constitute a voidable spendthrift trust because its settlors include Summit Investment and Summit Valdes which are not named beneficiaries of the California Trust.   They argue further that because the California Trust has beneficiaries in addition to Mr. Potter, that the California Trust is not a self-settled spendthrift trust.   But neither the fact that Summit Investment and Summit Valdes are not identified as beneficiaries nor the fact that the beneficiaries of the California Trust include parties other than Mr. Potter negate the fact that Mr. Potter is both a settlor *and* a beneficiary of the California Trust.[38]   In other words, the existence of additional settlors and additional beneficiaries of the California Trust does not serve to validate the spendthrift provision as to Mr. Potter, who is both settlor and beneficiary.   Under either California or New Mexico law, the California Trust includes a spendthrift provision that is void as a matter of law as to Mr. Potter's creditors.[39]   The Trustee is entitled to summary judgment on her claim to void the spendthrift

---

[38]*Cf. Matter of Shurley,* 115 F.3d 333, 338 (5th Cir. 1997)(construing Texas law on spendthrift trusts and concluding that creditors were entitled to reach the self-settled portion of a spend-thrift trust that was only partially self-funded); *In re Bradley,* 501 F.3d 421, 433 (5th Cir. 2007)(allowing trustee to recover assets the debtor transferred into a trust even though some assets were co-mingled with assets transferred by third parties).

[39]*See In re Barnes,* 275 B.R. 889, 895 (Bankr.E.D.Cal. 2002)(finding that because the debtors were both the settlors and the beneficiaries of the trusts, the spendthrift provisions of the trust were invalid, and the beneficial interests of the debtors in the trust's assets were included in

24

provisions of the California Trust as to the assets transferred to the trust by Mr. Potter.

Count XIV - The Trustee has Standing To Avoid the Transfers Made by Summit Investment Company, LLC and Summit Valdes, LLC

This Court previously determined in its Order Denying MTD (Docket # 83) that the Trustee would have standing to undo the transfers of assets made by Summit Valdes and Summit Investment where the effect of the transfers of the assets of Summit Valdes[40] and Summit Investment to the California Trust was to devalue or remove property from the reach of Mr. Potter's creditors. *See* Order Denying MTD, pp. 7 and 8, citing *In re Hill,* 265 B.R. 296, 300 (Bankr.M.D.Fla. 2001). The Court further concluded that the Trustee had direct standing to avoid the transfers by Summit Valdes and Summit Investment of their property to the California Trust. *See* Order Denying MTD, p. 11. Thus the question of the Trustee's standing to seek recovery of the transfers made by Summit Investment and Summit Valdes has already been established in this proceeding and summary judgment on this issue is appropriate.

Counts XV and XVI - The Trustee is Entitled to Turnover of the Property Transferred to the California Trust In Accordance with 11 U.S.C. § 550

Once a transfer has been avoided under 11 U.S.C. § 548, the trustee may recover the property for the benefit of the estate in accordance with 11 U.S.C. § 550. That section provides, in relevant part:

---

the bankruptcy estate); *In re Kuraishi,* 237 B.R. 172, 175 (Bankr.C.D.Cal. 1999)(holding that self-settled spendthrift trust is not enforceable under California law and assets held in such a trust become assets of settlor's bankruptcy estate); *In re Brackett,* 54 B.R. at 58.

[40]Summit Valdes also transferred its interest in Summit FloorMart, LLC, Summit Business Center, LLC, and Santa Fe Business Park, LLC to the California Trust.

Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from --

> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

The trustee's right to recover transferred property is limited by subsection (b) which provides:

> The trustee may not recover under section (a)(2) of this section from --
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b).

However, "[t]he 'good faith' defense of section 550(b) does *not* apply to the 'initial transferee' of the debtor or the 'entity for whose benefit such transfer was made,' and the trustee's power to recover from these entities under section 550(a)(1) is absolute." *Danning v. Miller (In re Bullion Reserve of North America),* 922 F.2d 544, 547 (9th Cir. 1991)(quoting 11 U.S.C. § 550(b)(emphasis in original).[41] The California Trust, as the recipient of the transfers, is the initial transferee. Having established that the transfers to the California Trust were fraudulent, the California Trust is strictly liable.[42]

---

[41]*See also Rupp v. Markgraf,* 95 F.3d 936, 938 (10th Cir. 1996)(stating that "[n]o such good faith defense is available to the initial transferee or the 'entity for whose benefit such transfer was made' under § 550(a)(1); the trustee may always recover from the initial transferee regardless of good faith, value, or lack of knowledge of the voidability of the transfer.").

[42]*In re Potter,* 386 B.R. 306, 308 (Bankr.D.Colo. 2008)("The 'initial transferee' and the 'entity for whose benefit such transfer was made' are strictly liable, regardless of good faith, value, or lack of knowledge of the voidability of the transfer.")(quoting 11 U.S.C. § 550(b) and

26

Ms. Danilovic was the initial trustee of the California Trust, and Mr. Friedlander now serves as the successor trustee of the California Trust. As the current trustee of the California Trust and as one of its beneficiaries, Mr. Friedlander also falls within the parameters of "initial transferee" or "entity for whose benefit the transfer was made."[43] Even if the Court were to consider Mr. Friedlander an immediate, or mediate transferee based on his status as successor trustee of the California Trust, or based on any liens he may claim against assets of the California Trust, he does not qualify as a good faith transferee without knowledge of the voidability of the transfer based on his role in the formation of the California Trust.

Mr. Friedlander readily admits that he drafted the California Trust.[44] He has also acknowledged that he is one of its intended beneficiaries.[45] By assisting in the formation of a trust whereby he benefits, Mr. Friedlander cannot qualify as a good faith mediate transferee and has likely breached a duty to Mr. Potter.[46] Despite (or perhaps because of) the language in the

_____

citing *Rupp v. Markgraf,* 95 F.3d at 938).

[43]*See Rupp v. Markgraf,* 95 F.3d at 941 (test for whether a party is an initial transferee is whether the party has dominion and control of the property to put the property to his or her own purposes)(citing *Bonded Fin. Services, Inc. v. European Am. Bank,* 838 F.2d 890, 893 (7th Cir. 1988)).

[44]*See* Response, p. 10.

[45]*See* Response, p. 11; California Trust, Article I., Section B. "The Current Beneficiaries shall be the Settlors' present attorneys . . .". ; Friedlander's Surreply, p. 2

[46]The California Trust gives the trustee the power to make payments to any beneficiary. *See* California Trust, Article IV, Section A., "The trustee may make payments to any beneficiary." Thus, as trustee and beneficiary of the California Trust Mr. Friedlander has the power to make payments from the assets of the California Trust to himself. The California Trust itself appears to recognize this potential problem. *See* Article VI, Section B., ¶ 3 ("[T]he reasonable adverse interests of the Trustee or any successor Trustee under this Agreement, which may exist because a Trust or successor Trustee is also a Beneficiary under the Trusts created by this Agreement, shall not disqualify the Trustee from retaining his or her position of trust or

27

California Trust stating that its intended purpose is "not to defraud present or existing creditors" it is apparent to the Court that Mr. Friedlander knew or should have known that the transfers to the California Trust were likely voidable.[47]  By transferring all of Potter's assets to the California Trust, the effect was to place assets out of creditor's immediate reach.   Clearly Mr. Friedlander does not qualify as a good faith transferee without knowledge that the transfers at issue are likely voidable. *See* 11 U.S.C. § 550(b). The Trustee is entitled under 11 U.S.C. § 550 to recover from the California Trust all property transferred by Mr. Potter to the California Trust.  And because the Trustee is entitled to recover the fraudulently transferred property under 11 U.S.C. § 550, it is not necessary to order turnover under 11 U.S.C. § 542 at this time.[48]

Based on the foregoing, the Court concludes that the Trustee is entitled to summary judgment as to Counts I, III, IV, V, VI, VII, XIV, and XV.  Count XVI, requesting turnover under 11 U.S.C. § 542, will be denied without prejudice.  Fact issues preclude summary judgment as to Counts II and IV.   The Court will enter an order and a judgment against Mr.

---

exercising his or her discretion in all matters in connection with any of the trusts.").

[47]*See* 5 Collier on Bankruptcy ¶ 550.03[2] (Alan N. Resnick and Henry J. Sommer, eds., 15th ed. rev. 2008)(the question of good faith under § 550(b) "'is solely whether the grantee knew or should have known that he was not trading normally but that on the contrary, the purpose of the trade, so far as the debtor was concerned, was the defrauding of his creditors.'")(quoting *In re Messenger,* 32 F.Supp 490 (E.D.Pa. 1940)(quoting Glenn, Fraudulent Conveyances, § 295 (1931)).  *See also Jobin v. McKay (In re M & L Business Mach. Co., Inc.),* 84 F.3d 1330, 1336 (10th Cir. 1996)(discussing good faith defense under § 548(c), and noting that the majority of bankruptcy courts hold that "a transferee who reasonably should have known of a debtor's insolvency or of the fraudulent intent underlying the transfer is not entitled to the § 548(c) good faith defense.")(citations omitted).

[48]The  Motion for Summary Judgment requests the Court to order immediate turnover of the property under 11 U.S.C. § 542 because "[s]uch an order would eliminate the need for ancillary state-court litigation over possession and control of the Property."  But the Motion for Summary Judgment does not establish sufficient undisputed material facts showing that the property transferred to the California Trust is no longer held by the California Trust.

28

Potter and Mr. Friedlander consistent with this Memorandum Opinion.

MARK B. McFEELEY
United States Bankruptcy Judge

Date entered on docket:  July 29, 2008

COPY TO:

David T Thuma
Attorney for Plaintiff
500  Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Jeffery W. Potter
Defendant
PO Box 8280
Santa Fe, NM 87504-8280

Martin S. Friedlander
Defendant
10350 Wilshire Blvd Ste 603
Los Angeles, CA 90024-4717